**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

MIDWEST DIRECT LOGISTICS, INC.,

    Plaintiff,

vs.

TWIN CITY TANNING WATERLOO, LLC,

    Defendant.

No. 15-CV-2013-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.  RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . *2*

*III. ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

    *A.   Midwest Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
        *1.   Undisclosed exhibits and witnesses* . . . . . . . . . . . . . . . . . *3*
        *2.   Lerner's opinion testimony* . . . . . . . . . . . . . . . . . . . . . *4*
        *3.   Lerner's affidavit and deposition* . . . . . . . . . . . . . . . . . *6*
        *4.   TCTW's interest in the hide trimmings* . . . . . . . . . . . . . . *8*
        *5.   Payment to Twin City Hide, Inc.* . . . . . . . . . . . . . . . . . . *9*
    *B.   TCTW Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
        *1.   Terms and conditions* . . . . . . . . . . . . . . . . . . . . . . . *10*
        *2.   Subsequent practice* . . . . . . . . . . . . . . . . . . . . . . . . *11*
        *3.   Roos's past employment* . . . . . . . . . . . . . . . . . . . . . *14*
    *C.   Overarching Issue of Law* . . . . . . . . . . . . . . . . . . . . . . . . *15*

*IV. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*

## I. INTRODUCTION

The matters before the court are Plaintiff Midwest Direct Logistics, Inc.'s ("Midwest") Motion in Limine ("Midwest Motion") (docket no. 46) and Defendant Twin City Tanning Waterloo, LLC's ("TCTW") Motion in Limine ("TCTW Motion") (docket no. 47) (collectively, "Motions").

## II. RELEVANT PROCEDURAL HISTORY

On August 4, 2016, Midwest filed the Midwest Motion. On that same date, TCTW filed the TCTW Motion. On August 11, 2016, TCTW filed a Resistance to the Midwest Motion ("TCTW Resistance") (docket no. 52). On that same date, Midwest filed a Resistance to the TCTW Motion ("Midwest Resistance") (docket no. 51). On August 18, 2016, the court held a Final Pretrial Conference ("FPTC"), at which the parties addressed the Motions. *See* Aug. 18, 2016 Minute Entry (docket no. 58).

## III. ANALYSIS

### A. *Midwest Motion*

In the Midwest Motion, Midwest argues that the court should prohibit TCTW from introducing the following:

(1) "Any and all exhibits or witnesses not timely disclosed";

(2) "Evidence of Michael Lerner's opinion that the bills of lading serve only as a receipt and not to indicate responsibility for payment";

(3) "Evidence contained in Michael Lerner's Affidavit either directly or through his deposition testimony";

(4) "Evidence of Michael Lerner's opinion that [TCTW] is not responsible for making payment to Midwest";

(5) "Evidence that [TCTW] had no beneficial interest in the hide trimmings"; and

(6) "Evidence that Twin City Hides, Inc. has not been paid for the [twenty-seven] loads of hide trimmings represented by the bills of lading."

Midwest Motion at 1-2. The court shall address the admissibility of Lerner's opinion testimony together, but shall address each other objection separately.

### *1.  Undisclosed exhibits and witnesses*

Midwest argues that, "[s]hould [TCTW] attempt to call previously undisclosed witnesses and/or introduce undisclosed exhibits at trial, Midwest . . . objects . . . ." Brief in Support of the Midwest Motion (docket no. 46-1) at 1. Federal Rule of Civil Procedure 37(c)(1) states that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Rule 26(a) governs initial disclosures by the parties, and Rule 26(e) requires the parties to supplement their initial disclosures as necessary. *See* Fed. R. Civ. P. 26(a), (e). TCTW does not dispute that such evidence should be timely disclosed. *See* Brief in Support of the TCTW Resistance (docket no. 52-1) at 1.

However, the court has discretion in determining whether to exclude late-disclosed evidence. *See* Fed. R. Civ. P. 37(c)(1) (providing that a failure to disclose that is "substantially justified or is harmless" will not result in the exclusion of the evidence); *see also Davis v. U.S. Bancorp*, 383 F.3d 761, 765 (8th Cir. 2004) ("Rule 37 does not provide for mandatory sanctions, and the district court may find that a party's failure to include a witness in the initial Rule 26(a)(1) disclosures was substantially justified or harmless."). Furthermore, even if the court finds a violation of Rule 26(a) or (e) and the violation was not substantially justified or harmless, the court is not required to exclude the evidence. It has considerable discretion in crafting an appropriate sanction. *See* Fed. R. Civ. P. 37(c)(1)(A)-(c)(1)(c); *Carmody v. Kan. City Bd. of Police Comm'rs*, 713 F.3d 401, 405 (8th Cir. 2013) (noting that the court's "'discretion to fashion a remedy or sanction' is

3

'wide,' but 'narrows as the severity of the sanction or remedy . . . increases'" (alteration in original) (quoting *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008)). The court finds that it is unable to make a determination as to the admissibility of any potentially undisclosed witnesses or evidence unless and until such time that a party offers such evidence. Accordingly, the court shall reserve ruling on the admissibility of any such evidence.

### 2. *Lerner's opinion testimony*

Midwest argues that Michael Lerner's testimony that he viewed the bills of lading as mere receipts should be excluded. Midwest argues that "testimony by a lay witness is allowed in the form of an opinion if it is . . . rationally based on [the] witness['s] perceptions; . . . helpful to clearly understand[] the witness['s] testimony or to determine a fact and issue; . . . and not based on scientific, technical or other specialized knowledge within the scope of [Federal Rule of Evidence] 702." Brief in Support of the Midwest Motion at 2-3 (citing Fed. R. Evid. 701). Midwest further argues that "Lerner's anticipated testimony that [TCTW] was not responsible for payment to Midwest is irrelevant . . . [and] is not rationally based on the witness's perception." *Id*. at 4. Midwest maintains that Lerner's mere assumption that Atlantic would be liable for shipping costs does not comport with Rule 701. *Id*.

TCTW argues that Lerner's testimony that the bills of lading operated as receipts "is not directed at bills of lading in general." Brief in Support of the TCTW Resistance at 1. TCTW maintains that such testimony stems from Lerner's personal knowledge of the particular terms of freight negotiated by Atlantic and Midwest. *Id*. TCTW argues that Lerner is merely a fact witness because "he was a party who negotiated the contract terms with [Midwest]." *Id*. at 2. TCTW further argues that Lerner's testimony that Atlantic was solely liable for the cost of shipping is admissible. *See id*. at 3-4. TCTW argues that any agreement between Atlantic and Midwest was based on Lerner's personal knowledge due

to his negotiation of freight terms with Midwest and the course of conduct between Midwest and Atlantic. *Id.* at 4. TCTW maintains that such evidence is relevant to Lerner's state of mind and intent. *Id.*

Federal Rule of Evidence 701 requires that any lay witness's opinion be based on the witness's perception, be helpful to understand the witness's testimony or to determine a fact at issue and not be based on scientific, technical or specialized knowledge. "If a witness is not testifying as an expert, his testimony in the form of opinions or inferences need only be rationally based on his perception and helpful to the determination of a fact at issue." *Greenwood Ranches, Inc. v. Skie Constr. Co.*, 629 F.2d 518, 522 (8th Cir. 1980). A party may not evade the disclosure and reliability requirements of Federal Rule of Evidence 702, governing expert witnesses, merely by designating a witness as a lay witness. But where an opinion is based, not on experience, training or specialized knowledge within the realm of an expert, but instead on "the particularized knowledge that the witness has by virtue of his or her position" in relation to the action, such evidence is ordinarily admissible. Fed. R. Evid. 701 advisory committee's note to 2000 amendment; *see also, e.g.*, *United States v. Westbrook*, 896 F.2d 330, 336 (8th Cir. 1990) (authorizing two lay witnesses who were heavy amphetamine users to testify that a substance was an amephetamine based on their experience with the substance).

With respect to Lerner's opinion that the bills of lading operated as receipts, Lerner testified in his deposition that, while he was not personally familiar with the bills of lading for the twenty-seven hide shipments at issue, he had prior experience with bills of lading from Midwest. *See* Exhibit 1 to the Midwest Motion (docket no. 46-2) at 6 (Lerner testifying that he saw bills of lading from Midwest "[o]n occasion"). Thus, even assuming that Lerner's testimony is indeed lay opinion testimony, the court finds that any testimony Lerner gives regarding the bills of lading at trial is rationally related to bills of lading that Atlantic received from Midwest over the course of their relationship. The court further

finds that Lerner's opinion that the bills of lading operated as mere receipts would be helpful to a fact finder in determining whether Atlantic agreed to be solely liable for the cost of shipping. Finally, regardless of whether Lerner's knowledge of the effect of Section 7 on a bill of lading was obtained from a Wikipedia article, as Midwest argues, *see* Brief in Support of the Midwest Motion at 2, Lerner's testimony as to his understanding of the effect of the bills of lading at issue was based on his experience purchasing and selling hide trimmings, as well as his long business relationship with Midwest. Any testimony as to his understanding of the bills of lading would not be based on specialized knowledge, but rather "particularized knowledge" that Lerner has due to his position as one of the owners of Atlantic and someone with whom Midwest regularly communicated. Therefore, the court finds that such testimony is admissible.

With respect to Lerner's opinion that Atlantic was solely liable for the cost of shipping, the court finds such testimony admissible. Though there is no evidence of a written agreement, and there is some confusion in the record as to whether there was an explicit oral agreement between Atlantic and Midwest, any testimony as to the purported agreement to pay would be rationally based on Lerner's perceptions. For example, Lerner testified in his deposition that he was receiving invoices from Midwest and that he was paying them. Lerner's perceptions regarding the purported agreement between Atlantic and Midwest are certainly rationally related to such course of performance between the parties. Such evidence is admissible. Accordingly, the court shall deny the Midwest Motion with respect to Lerner's opinion testimony.

### 3. *Lerner's affidavit and deposition*

Midwest argues that an affidavit written by Lerner, submitted to the court with TCTW's Motion for Summary Judgment, "should be excluded because it is hearsay." Brief in Support of the Midwest Motion at 3. Midwest further argues that any deposition testimony as to the contents of Lerner's affidavit should also be excluded. *Id*. at 4.

TCTW argues that, even if the affidavit were to be excluded, "Lerner's deposition testimony stands on its own . . . [and] Lerner could still testify about the factual matter referenced in the affidavit." Brief in Support of the TCTW Resistance at 3. TCTW further maintains that Lerner's deposition testimony is admissible. *Id.*

The Federal Rules of Evidence define hearsay as an out of court statement offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Here, however, TCTW has not indicated for which reasons it would offer the affidavit, or which statements in the affidavit it would seek to offer. Therefore, at this stage the court is not in a position to judge whether or not the affidavit, if offered at all, would be offered to prove the truth of the statements made therein. *But see Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 907-08 (8th Cir. 2010) (noting that, where affidavits to a life insurance policy constitute hearsay, they are "normally excluded under . . . the Federal Rules of Evidence 801(c) and 802"). Accordingly, the court cannot rule on the admissibility of the affidavit.

If TCTW seeks to offer Lerner's deposition, such testimony would ordinarily be hearsay. However, because the parties agree that Lerner resides outside of the court's subpoena power, the prior testimony exception to the rule against hearsay may apply. *See* Brief in Support of the TCTW Resistance at 3; Fed. R. Evid. 804(a)(5). Rule 804(b)(1) permits the admission of testimony that "was given as a witness at a . . . lawful deposition . . . and is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1) (formatting omitted). Here, Lerner's deposition was lawful and is being offered against Midwest, who had the opportunity and motive to fully cross examine him as to all statements made therein. Accordingly, TCTW is not prohibited from seeking to admit the deposition testimony. However, as TCTW correctly argues, the Trial Management Order (docket no. 13), provides specific procedures for offering, objecting to and resolving objections to deposition testimony. *See* Trial Management Order at 10-11. Because the time for

7

offering deposition testimony and making objections has not passed, the court declines to rule on any objection Midwest wishes to make at this time because such objection is premature. Accordingly, the court shall reserve ruling on the Midwest Motion with regard to Lerner's affidavit and deposition testimony.

### 4. *TCTW's interest in the hide trimmings*

Midwest argues that any evidence that TCTW had no beneficial or financial interest in the hide trimmings should not be admitted because it is irrelevant. Brief in Support of the Midwest Motion at 4-5. Midwest states that the sole question at trial is whether or not TCTW is the "consignor" for purposes of the bills of lading, and highlights the fact that there is no evidence in the record regarding whether or not Midwest knew that TCTW did not have any interest in the hide trimmings. *Id.* at 5. TCTW argues that such evidence is relevant to Midwest's second count for breach of an implied contract. Brief in Support of the TCTW Resistance at 5. TCTW argues that Midwest's proposed jury instruction on that count requires Midwest to prove that its "services were beneficial to the recipient." *Id.* TCTW maintains that it "did not sell the hide trimmings, and TCTW received nothing when the shipments were made." *Id.*

Relevant evidence is generally admissible. *See* Fed. R. Evid. 402. The Federal Rules of Evidence define relevant evidence as evidence that has the tendency to make a fact of consequence more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. Here, evidence of TCTW's interest in the hide trimmings is relevant to Midwest's claim for breach of an implied contract. Whether TCTW owned or benefitted from the hide trimmings is probative of whether it was a real party in interest to the transaction, thus receiving a benefit from Midwest's services as required to demonstrate

the existence of an implied contract.[1]  Accordingly, the court shall deny the Midwest Motion with respect to the ownership of the hide trimmings.

### 5. *Payment to Twin City Hide, Inc.*

Finally, Midwest argues that TCTW should be prevented from introducing evidence demonstrating that TCTW's parent company, Twin City Hide, Inc., was never paid by Atlantic for the hide trimmings because such evidence is irrelevant. Brief in Support of the Midwest Motion at 5. TCTW states that it "does not presently plan to submit evidence that Twin City Hide, Inc. was not paid for some of the material shipped by [Midwest] to Kraft." Brief in Support of the TCTW Resistance at 6. Accordingly, the court shall grant the Midwest Motion with respect to the payments to Twin City Hide, Inc.

### B. *TCTW Motion*

In the TCTW Motion, TCTW argues that the court should prohibit Midwest from introducing the following:

(1) "Plaintiff's Exhibit 3. Purported terms and conditions of a bill of lading, that were not used by the parties in this case . . . .";

(2) "Evidence of subsequent remedial efforts by TCTW, by which TCTW has executed [Section] 7 on the bill of lading for shipments after the events at issue in this case"; and

---

[1] Furthermore, as the court noted in its Order on the parties' motions for summary judgment, whether TCTW had a beneficial interest in the hide trimmings is germane to a potential defense TCTW could raise at trial. *See* July 26, 2016 Order (docket no. 45) at 22-23; *see also Louisville & Nashville R.R. Co. v. Central Iron & Coal Co.*, 265 U.S. 59, 67 (1924) (observing that a consignor may escape liability under a bill of lading where it can demonstrate "that the shipper of the goods was not acting on his own behalf" and "that this fact was known by the carrier"). While it is true that there is no evidence in the record that Midwest knew that TCTW did not have a beneficial interest in the hide trimmings, that does not foreclose TCTW from attempting to prove such knowledge at trial.

9

(3) "Evidence of the practices of non-parties to this case, who were former employers of TCTW employee Volker Roos, concerning those parties' use of bills of lading."

TCTW Motion at 1. The court shall address each request separately.

### 1. *Terms and conditions*

TCTW argues that certain stock terms and conditions to a bill of lading should be excluded from evidence. Brief in Support of the TCTW Motion at 1. TCTW admits that "[t]erms and conditions like these sometimes might be found on the reverse side of a bill of lading" but that "the bills of lading used by the parties did not . . . contain any terms and conditions." *Id.* TCTW argues that, "[w]hatever the parties' agreement may have been, it could not have included terms that were neither exchanged nor considered by the parties." *Id.* at 1-2. Therefore, TCTW argues, such evidence is irrelevant and misleading to the jury. *Id.* Midwest argues that the evidence is relevant because Volker Roos, one of TCTW's 30(b)(6) representatives, testified that, in his experience working in the industry, there were terms and conditions included with all other bills of lading. Brief in Support of the Midwest Resistance (docket no. 51-1) at 2. Midwest argues that "[e]vidence of what is typically on the back of the bills of lading is relevant to show that TCTW knew the terms and conditions of the bills of lading and its intent to comply with [them]." *Id.*

It is undisputed that the bills of lading at issue certify that the shipper is "familiar with all of the terms and conditions" of the bills of lading, provide that the services to be performed thereunder are "subject [to] all the terms and conditions of the Uniform Domestic Straight Bill of Lading" and that "Section 7 of [the] Conditions of Applicable Bill of Lading" applies. *See* Midwest Statement of Facts in Support of Summary Judgment (docket no. 35-2) ¶¶ 30, 31. Here, any terms and conditions applicable to the Uniform Domestic Straight Bill of Lading would likely be incorporated by reference into the bills

of lading at issue and, thus, be relevant. *See, e.g.*, *Starrag v. Maersk, Inc.*, 486 F.3d 607, 613 (9th Cir. 2007) (recognizing that bills of lading can incorporate terms from the uniform language by reference); *Fireman's Fun McGee v. Landstar Ranger, Inc.*, 250 F. Supp. 2d 684, 689-90 (S.D. Tex. 2003) (finding that the terms of the Uniform Domestic Straight Bill of Lading had been incorporated by reference into the bills of lading at issue in the case and thus the nine-month filing deadline for a Carmack Amendment claim applied even though not explicitly provided for in the bills). However, the terms and conditions offered by Midwest have not been authenticated and Midwest has offered no foundation for them—for example, there is no evidence in the record that such terms and conditions are identical or even similar to those normally found on the back of the bills of lading that TCTW issues.[2] *See* Fed. R. Evid. 901. Nor are the terms and conditions identical to those of the Uniform Domestic Straight Bill of Lading as articulated in 49 C.F.R. § 1035, app'x B and specifically referenced in the bills of lading at issue here. Accordingly, the court finds that such evidence is inadmissible and the court shall grant the TCTW Motion with respect to the stock terms and conditions.

### 2. *Subsequent practices*

TCTW argues that Midwest should be prohibited from eliciting testimony that TCTW now endorses the nonrecourse provision on its bills of lading. *See* Brief in Support of the TCTW Motion at 2. TCTW argues that "Midwest would offer TCTW's subsequent decision to execute [the nonrecourse provision] on bills of lading as an admission that it should have done so with the bills of lading in question," which would violate Rule 407. *Id.* TCTW maintains that "the purpose of Rule 407 is to allow a party in litigation to make subsequent changes in conduct without being punished in the litigation for doing so." *Id.*

---

[2] As near the court can tell, the exhibit being offered by Midwest is the second page of Exhibit 39(b) to Lerner's deposition. *See* App'x to Midwest Motion for Summary Judgment (docket no. 35-3) at 101-02. Such exhibit is a bill of lading used by UPS, not TCTW.

at 3. TCTW also argues that such evidence would confuse the jury and is irrelevant. *Id.* at 2. Midwest argues that such subsequent measures are probative of TCTW's understanding of the purpose of the nonrecourse provision and TCTW's view of the bills of lading as contracts, rather than as evidence of TCTW's fault. Brief in Support of the Midwest Resistance at 4.

Federal Rule of Evidence 407 prohibits the admission of "measures . . . taken that would have made an earlier injury or harm less likely to occur" for the purpose of proving negligence, "culpable conduct," a product defect or the need for a warning or instruction. Fed. R. Evid. 407. However, "the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." *Id.* "Of course, to be admissible any evidence not excluded by [R]ule 407 must still be relevant . . . and its probative value must outweigh any dangers associated with its admission." *Anderson v. Malloy*, 700 F.2d 1208, 1213 (8th Cir. 1983).

Here, Midwest argues that TCTW's current practice of endorsing the nonrecourse provision is not probative of fault or negligence on the part of TCTW. However, the evidence is probative of "culpable conduct," which would potentially make TCTW liable for the freight charges in question. The subsequent practice could lead a jury to conclude that TCTW understands the bills of lading to be contracts allocating liability for freight charges. TCTW's prior failure to sign the nonrecourse provision would then demonstrate TCTW's intent to be held liable for the charges at issue here. Therefore, the court concludes that the evidence is within the realm of Rule 407's prohibition on subsequent remedial measures. TCTW has not disputed the feasibility of endorsing the nonrecourse provision, nor has it disputed ownership or control of the bills of lading in question. Therefore, the evidence is inadmissible for those purposes. Finally, Midwest has not suggested that the evidence will be used to impeach TCTW's witnesses. Instead, Midwest argues that this subsequent remedial measure is probative of the parties' intent and

understanding of the bills of lading. This is not one of the recognized exceptions to Rule 407—Midwest has not provided any authority permitting the court to admit the evidence on these grounds and the court is unaware of any. Accordingly, the court finds that evidence of TCTW's subsequence practice should be excluded from evidence.

However, even if the evidence were admissible under Rule 407, the court would still exclude the evidence under Rule 403. *See* Fed. R. Evid. 407 advisory committee's note to 1997 amendment ("Evidence of subsequent measures that is not barred by Rule 407 may still be subject to exclusion on Rule 403 grounds when the dangers of prejudice or confusion substantially outweigh the probative value of the evidence."); *Bizzle v. McKesson Corp.*, 961 F.2d 719, 721-22 (8th Cir. 1992) (recognizing that, even where the district court erred in excluding evidence based on Rule 407, such error was harmless because the evidence was excludable under Rule 403). Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid. 403. Here, the court finds that evidence of TCTW's subsequent practices is so prejudicial and potentially misleading that any probative value is substantially outweighed and exclusion is proper. Midwest argues that the subsequent measures are probative of TCTW's understanding of the bills of lading as contracts. However, the court finds that any probative weight that TCTW's subsequent practices have in regards to its understanding of the bills of lading *before* it was sued is minimal. Such evidence is certainly probative of TCTW's understanding of the bills of lading currently, but it is substantially less probative of its understanding of the bills of lading prior to suit. Furthermore, allowing Midwest to submit TCTW's subsequent practices to the jury runs the danger of the jury interpreting such practices to be a tacit admission that TCTW should have been signing the nonrecourse provision all along. While the court recognizes that all relevant evidence is prejudicial to some degree, the degree of prejudice here substantially

outweighs the minimal probative impact that TCTW's subsequent practices have. Therefore, the court finds such evidence to be excludable under Rule 403. Accordingly, the court shall grant the TCTW Motion with respect to its subsequent practice of signing the nonrecourse provision.

### 3. *Roos's past employment*

Finally, TCTW seeks exclusion of evidence that "'all of the previous employers' of TCTW employee Volker Roos had executed [the nonrecourse provision]." Brief in Support of the TCTW Motion at 3. TCTW argues that such evidence would be irrelevant because "[t]he facts and circumstances of why parties not involved in this case would, or would not, execute [the nonrecourse provision], is far afield from determining the intent of these parties with respect to payment liability for shipping charges." *Id*. TCTW argues that Roos has "no authority" to determine whether TCTW would agree to be liable for shipping charges and "his state of mind concerning the importance of [the nonrecourse provision] is not relevant." *Id*. Midwest argues that "Roos'[s] knowledge demonstrates that TCTW had knowledge of bills of lading, their meaning and uses as contract[s], and the significance of [the nonrecourse provision]." Brief in Support of the Midwest Resistance at 5. Midwest maintains that Roos's testimony "is relevant to TCTW's understanding that the bills of lading were meant to be contracts not receipts." *Id*.

As the court stated above, relevant evidence is any evidence that has the tendency to make a fact of consequence more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. Here, Midwest seems to argue that Roos's knowledge of his previous employers' practices concerning bills of lading should be imputed to TCTW, because such knowledge would make it more likely that TCTW viewed the bills of lading as contracts and thereby intended to incur liability under them. Generally, the knowledge of key employees or officers can be imputed to a business entity. *See, e.g.*, *First Nat'l Bank of Sikeston v. Transamerica Ins. Co.*, 514 F.2d 981, 986 (8th Cir. 1975); *Regal Ins.*

*Co. v. Summit Guar. Corp.*, 324 N.W.2d 697, 703-04 (Iowa 1982). However, TCTW has stated that "Roos had no authority for determining whether TCTW would be paying shipping charges," Brief in Support of the TCTW Motion at 3, which suggests that Roos does not occupy a position for which knowledge would ordinarily be imputed to the company. *Cf. United States v. Little Rock Sewer Comm.*, 460 F. Supp. 6, 9-10 (E.D. Ark. 1978) (expressing doubt that the knowledge of "a low echelon employee" should be imputed to a corporation). Midwest has not disputed that Roos did not, in fact, have such authority. In any event, because Roos was not in a position of authority regarding shipping charges, his prior experience with bills of lading does not tend to make it more or less likely that his employer viewed the bills of lading as contracts. Therefore, evidence of Roos's prior employment is irrelevant and inadmissible to prove that TCTW viewed the bills of lading as contracts.[3] Accordingly, the court shall grant the TCTW Motion.

### C. Overarching Issue of Law

At the Final Pretrial Conference, Midwest argued that a central issue to the instant action is whether any purported agreement between Atlantic and Midwest can control over the contractual terms of the bill of lading between Midwest and TCTW. Midwest argues that the purported agreement between Atlantic and Midwest does not impact TCTW's liability under the bills of lading, because any agreement relieving TCTW of liability under the bills of lading would have to occur between TCTW and Midwest. In support of its

---

[3] Whether such testimony is admissible to demonstrate some other fact, such as industry standards, is not currently before the court, and the court declines to rule on such issue. In any event, TCTW has not intimated that it will be calling Roos as an expert witness to testify as to industry standards and neither party has addressed whether an expert on industry standards is needed. *See, e.g.*, *S. Pine Helicopters, Inc. v. Phx. Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) ("[I]ndustry practice or standards may often be relevant . . ., and expert or fact testimony on what these are is often admissible."); *Wick v. Henderson*, 485 N.W.2d 645, 648 (Iowa 1992) (noting that, in negligence cases, "expert testimony . . . is not required when a layperson is competent to pass judgment and conclude from common experience" the requisite issues).

argument, Midwest points to *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949 (9th Cir. 2008).

In *Oak Harbor*, the Ninth Circuit held that a carrier does not waive its right to proceed against a consignor to bills of lading merely because it entered into a separate contract with a broker in which the broker agreed to pay the carrier regardless of whether the broker itself got paid. *Id.* at 956-57. However, Midwest's reliance on *Oak Harbor* is misplaced. The Ninth Circuit was troubled by the fact that the broker was not a party to the bills of lading and that neither the bills nor the separate contract expressly absolved the consignor of liability. However, the Ninth Circuit did reiterate that "it is well established that a contract between the parties to a bill of lading—the *shipper*, the *carrier*, and the *consignee*—can allocate liability for payment of freight charges . . . ." *Id.* at 956. In fact, the *Oak Harbor* court distinguished the cases cited by the shipper by stating that "the contracts at issue [in those cases] were entered into between a carrier and the direct parties to the bill of lading—the shipper, consignor, or consignee. Neither case involved a contract with a broker." *Id.* (citing *Roll Form Prods. Inc. v. All State Trucking Co.* (In re *Roll Form Prods., Inc.*), 662 F.2d 150 (2d Cir. 1981); *Toyo Kisen Kaisha v. W.R. Grace & Co.*, 53 F.2d 740 (9th Cir. 1931)). Thus, the Ninth Circuit in *Oak Harbor* did not hold that the agreement between the broker and the carrier was ineffectual because it was not specifically made between the shipper and the carrier, but rather because it was made by a third party who was a stranger to the bills of lading. In fact, the language used by the Ninth Circuit supports the view that an agreement between the consignee and the carrier, who are both parties bound by the terms of the bills of lading, could alter the default terms of the bills. The Ninth Circuit specifically contemplated that a consignee could enter into a contract allocating liability for freight charges. The court agrees with this view and therefore finds that TCTW may present evidence and argument on the

16

purported agreement between Midwest and Atlantic that Atlantic would be solely liable for the cost of freight.

## IV.  CONCLUSION

In light of the foregoing, the Midwest Motion (docket no. 46) is **GRANTED IN PART**, **DENIED IN PART** and the court **RESERVES RULING IN PART**.  The TCTW Motion (docket no. 47) is **GRANTED**.  Each party is charged with the responsibility of cautioning its witnesses as to the substance of this order.  If during the presentation of evidence a party believes that a prohibited subject has become relevant, the party may request an opportunity to argue relevance outside the presence of the jury.

**IT IS SO ORDERED.**

**DATED** this 23rd day of August, 2016.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA